**Josie JAIMES et al., Plaintiffs,**

v.

**TOLEDO METROPOLITAN HOUSING AUTHORITY et al., Defendants.**

Civ. No. C 74–68.

United States District Court, N. D. Ohio, W. D.

Jan. 14, 1977.

Glenn G. Galbreath, Advocates for Basic Legal Equality, Inc., Toledo, Ohio, for plaintiffs; Michael W. Warren, NCDH, Washington, D. C., of counsel.

William M. Connelly, Toledo, Ohio, for defendants.

## MEMORANDUM AND ORDER

DON J. YOUNG, District Judge.

This cause comes before the Court upon motion by defendants Hills, Morrow, Lydens, and the United States Department of Housing and Urban Development (hereafter collectively HUD) to dismiss the complaint for lack of standing and for mootness.

HUD contends that plaintiffs lack standing because they have not alleged and cannot demonstrate a probability that suburban communities would accept cooperation agreements with Toledo Metropolitan Housing Authority (hereafter TMHA; recently renamed Lucas County Metropolitan Housing Authority) to build low-income housing units in their communities. Because plaintiffs cannot do this, the Court cannot grant relief that would enable them to live in the suburban residential communities of Toledo. If the Court cannot grant the relief requested, HUD reasons, there is no justiciable case or controversy or, alternatively, plaintiffs incur no cognizable damage sufficient to confer standing upon them. To support this argument, the federal defendants rely on *Warth v. Seldin,* 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

Plaintiffs respond that the relief they seek is more than the execution of cooperative agreements with suburban communities; they seek to compel HUD to approve and implement a metropolitan dispersed-housing plan. Such a plan would locate low-income housing in Toledo suburbs if HUD affirmatively acts, as the Fair Housing Act requires, to eliminate racial housing patterns. The named plaintiffs are former residents of Toledo suburbs who have been denied the opportunity to remain in these areas because existing low-income housing is located only in racially segregated neighborhoods in the central city.

■ The Court finds that the named plaintiffs have standing to bring this action because they have alleged immediate and personal injury to themselves resulting from the asserted illegal action or inaction of HUD. In *Warth, supra,* the Supreme Court distinguished the precise circumstances of the instant action from the situation in the case then before it. The Supreme Court acknowledged the standing of low-income, minority-group plaintiffs, to challenge zoning restrictions that applied to particular housing projects designed to supply low-income housing. *Warth, supra* 422 U.S. at 507, 95 S.Ct. at 2209. Plaintiffs' standing in this case is even stronger in view of HUD's statutory obligation to provide public housing on a non-discriminatory basis. Plaintiffs in this action are the actual tenant claimants who would concretely benefit from fulfillment of that obligation. See *Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 40–42, 96 S.Ct. 1917, 1925, 48 L.Ed.2d 450 (1976).

It is true that plaintiffs may be unable to demonstrate that suburban communities will in fact sign cooperation agreements for publicly financed housing, but to require plaintiffs do so here and elsewhere would impose an insurmountable barrier to all litigation involving voluntary actions by non-litigant third parties. The purposes of the Fair Housing Act must not be thwarted by erecting such a barrier to reviewing alleged violation of the Act.

■ Second, HUD contends that this action is moot because TMHA has attempted to obtain cooperation agreements for low-income housing with out-lying communities, but these communities have declined to accept TMHA offers. TMHA's attempt to obtain cooperative agreements took the form of a letter of invitation dated September 10, 1975, stating in part:

In order to place housing in your community it will be necessary to have an executed Cooperation Agreement. Enclosed is a HUD Form Cooperation Agreement which we would ask that you review and have executed by the appropriate officials in your community. The Department of Housing and Urban Development has placed a time limit of September 30, 1975, for execution of the Co-

operation Agreement so time is of the essence."

HUD identifies no other efforts by TMHA to obtain cooperation agreements or to take other measures to locate low-income housing in the suburbs in the absence of such agreements.

In spirit if not in substance the TMHA invitation to suburban communities to sign the agreements is an invitation to decline the housing projects offered. The recipient of the letter is informed that he will be "contacted" to explore the agreement further, but is presented with a flat twenty-day deadline in which to have appropriate officials execute an enclosed HUD Form Cooperation Agreement. In a matter as legally complex and politically sensitive as the allocation of public housing, much more is required of all defendants to demonstrate best efforts than a pro forma letter of solicitation.

HUD fails to identify any strenuous efforts on its own part to disperse public housing in out-lying communities. Paragraph 35 of the complaint alleges that HUD has

> Failed and refused to take all necessary, appropriate and effective action to ensure that TMHA seek cooperation agreements and resolutions from the local governing bodies within its jurisdiction and that public housing be located in the suburban communities . . . and [has] failed and refused to impose sanctions within [its] power to impose.

The complaint alleges that HUD has knowingly supported TMHA practices, producing housing units in racially segregated and central city neighborhoods. More grave is the allegation that HUD has instructed TMHA not to seek cooperation agreements from other local governing bodies outside the City of Toledo. HUD has proffered no evidence that nullifies these allegations. This action is far from moot.

THEREFORE, for the reasons stated, good cause appearing, it is

ORDERED that the motion of the federal defendants to dismiss this action be, and it hereby is, overruled.

IT IS SO ORDERED.